Christopher A. Jones (VSB # 40064)
Alexandra G. DeSimone (VSB # 95760)
**WHITEFORD, TAYLOR & PRESTON LLP**
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042
Telephone: (703) 280-9260
Email: cajones@whitefordlaw.com
Email: adesimone@whitefordlaw.com

*Counsel to the Debtor and*
*Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

In re:

     PETER CHURCHILL LABOVITZ,

               *Debtor*.

        Chapter 11

        Case No. 24-11337-KHK

**CHAPTER 11 PLAN OF REORGANIZATION**

Peter Churchill Labovitz, the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby proposes and presents this Chapter 11 Plan of Reorganization (the "Plan"), pursuant to the provisions of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*.

**INTRODUCTION**

The Plan provides for the financial reorganization of the Debtor and treatment of his liabilities. Reference is made to the Debtor's *Disclosure Statement with Respect to the Debtor's Chapter 11 Plan of Reorganization* (the "Disclosure Statement") for a discussion of the facts underlying the Debtor's chapter 11 bankruptcy case, a description of the Debtor's assets and liabilities, and a summary and analysis of the Plan. All Creditors[1] entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

    **ARTICLE I.**       **DEFINED TERMS AND RULES OF INTERPRETATION**

    **A. Rules of Construction**

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that

---

[1] All capitalized terms have the meaning set forth in Article I of this Plan.

term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B. Definitions

1.1. ***Access Bank Claim*** means that claim represented by the Access Bank Note with an unpaid balance of $1,593,022.59 as of the Petition Date. The Access Bank Claim is held by DCIA.

1.2. ***Access Bank Deed of Trust*** means that that deed of trust properly recorded in the land records for the City of Alexandria on October 12, 2004 which secures the Access Bank Note.

1.3. ***Access Bank Note*** means a Promissory Note in the original principal amount of $1,630,000 payable to Access Bank.

1.4. ***Administrative Claim*** means a Claim for costs and expenses of administration of these Chapter 11 Cases under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), and entitled to priority under Bankruptcy Code section 507(a)(2), including: (a) any actual and necessary costs and expenses incurred after the Petition Date to preserve the Estate and operate the business of the Debtor; and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court.

1.5. ***Administrative Claims Bar Date*** means the first Business Day that is thirty (30) days following the Confirmation Date.

1.6. ***Allowed Claim*** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court; (b) that either (1) has been Scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, or (2) is the subject of a timely filed Proof of Claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (c) that is expressly allowed in a liquidated amount in this Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtor, or any other party in interest (1) has not interposed a timely objection or (2) has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; provided, further, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period as may be fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the

Bankruptcy Court or this Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Debtor as being an Allowed Claim.

1.7. ***Allowed [___] Claim*** means an Allowed Claim of the particular type or Class described.

1.8. ***Assets*** means all tangible and intangible assets of every kind and nature of the Debtor and his Estate, and all proceeds thereof, existing as of the Effective Date.

1.9. ***Assumption List*** means the list attached as Exhibit C to the Disclosure Statement, or such amended list as may be filed by the Debtor, which identifies the Leases and Executory Contracts to be assumed by the Debtor, the amounts of any cure payments proposed to be made with respect to such assumed Lease or Executory Contract, and other terms as may apply with respect to specific Leases or Executory Contracts that are proposed for assumption under the Plan.

1.10. ***Avoidance Actions*** means Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551, and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

1.11. ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject this Plan.

1.12. ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

1.13. ***Bankruptcy Court*** means the United States Bankruptcy Court for the Eastern District of Virginia, or any other court with jurisdiction over the Chapter 11 Case.

1.14. ***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Case or proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

1.15. ***Business Day*** means any day, other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006(a)).

1.16. ***Cash*** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

1.17. ***Causes of Action*** means any and all claims, actions, proceedings, causes of action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims (as defined in Bankruptcy Code section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, that the Debtor and/or Estate may hold against any Entity.

1.18. ***Chapter 11 Case*** means the Debtor's Chapter 11 bankruptcy case, Case No. 24-11337-KHK.

1.19. ***Claims Bar Date*** means November 20, 2024, which is the bar date for filing Proofs of Claim for Claims arising prior to the Petition Date against the Debtor.

1.20. ***Claims Objection Deadline*** means the first Business Day that is sixty (60) days following the Effective Date, or such later date as the Court may set pursuant to the request of the Debtor.

1.21. ***Class*** means a category of Holders of Claims or Interests, as described in Article II hereof.

1.22. ***Collateral*** means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim.

1.23. ***Collateral Pool Claim*** means that certain claim represented by various notes originally held by friends and family of the Debtor with a current balance of $6,175,026.36. The Collateral Pool Debt is held by DCIA.

1.24. ***Collateral Pool Deed of Trust*** means that certain deed of trust properly recorded in the land records for the City of Alexandria on December 24, 1992 which secures the Collateral Pool Debt.

1.25. ***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order.

1.26. ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the Chapter 11 Case.

1.27. ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.28. ***Confirmation Order*** means the order entered by the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129 in the Chapter 11 Case.

1.29. ***Consummation or Consummate*** means the occurrence of, or to achieve, the Effective Date.

1.30. ***Contingent*** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

1.31. ***Creditor*** means any Entity that holds a Claim against the Debtor.

1.32. ***DCIA*** means DCI Publishing of Alexandria, Inc.

1.33. ***Disallowed*** means, with respect to a Claim, or any portion thereof, that such Claim (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed, or

4

unliquidated, and as to which no Proof of Claim has been filed by the applicable Claims Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Claims Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

1.34. ***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) dated November 20, 2024 relating to this Plan, distributed in accordance with Bankruptcy Code sections 1125 and 1126(b) and Bankruptcy Rule 3018, as well as any amendments as may be filed by the Debtor with respect to such disclosure statement.

1.35. ***Disputed Claim*** means a Claim, or any portion thereof, that has not been Allowed pursuant to this Plan or a Final Order, and:

     (a)    if no Claim has been filed, or deemed to have been filed, by the applicable Bar Date, which has been or hereafter is listed on the Schedules, as such may be amended by the Debtor from time to time, as unliquidated, contingent or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

     (b)    if a Claim has been filed, or deemed to have been filed, by the applicable Claims Bar Date (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount of such Claim as asserted in the Claim varies from the amount of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed in accordance with this Plan and applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order;

     (c)    if a request for payment of an Administrative Claim has been filed or deemed to have been filed by the Administrative Claims Bar Date, an Administrative Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed in accordance with this Plan and applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order;

     (d)    for which a Claim was required to be filed by order of the Bankruptcy Court, but as to which a Claim was not timely or properly filed; or

     (e)    that is disputed in accordance with the provisions of this Plan.

1.36. ***Disputed [_____] Claim*** means a Disputed Claim of the type described.

1.37. ***Disputed Claim Amount*** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim as may have been modified by Final Order of the Bankruptcy Court; (ii) an amount agreed to by the Debtor and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor and the Holder of such Disputed Claim or (ii) zero; or (c) if the Claim was listed on the Schedules as unliquidated, contingent, or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

1.38. ***Distribution*** means any distribution pursuant to this Plan to the Holders of Allowed Claims.

1.39. ***Distribution Date*** means either the Initial Distribution Date, the Final Distribution Date or the date on which any other Distribution occurs.

1.40. ***Effective Date*** means the Business Day this Plan becomes effective as provided in Article VII hereof.

1.41. ***Entity*** has the meaning set forth in Bankruptcy Code section 101(15).

1.42. ***Estate*** means the estate of the Debtor created under Bankruptcy Code section 541.

1.43. ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, or filed separately with the Clerk of the Bankruptcy Court in connection with the hearing on the Confirmation of this Plan or the approval of the Disclosure Statement.

1.44. ***Federal Judgment Rate*** means the rate of interest applicable from time to time pursuant to 28 U.S.C. § 1961.

1.45. ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

1.46. ***Final Fee Applications*** means the final requests for payment of Professional Fee Claims.

1.47. ***Final Order*** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.48. ***General Unsecured Claim*** means a Claim that is not an Administrative Claim, a

Secured Claim, a Priority Tax Claim, or a Non-Tax Priority Claim.

1.49. ***Governmental Unit*** has the meaning set forth in Bankruptcy Code section 101(27).

1.50. ***Holder*** means an Entity holding a Claim or Interest.

1.51. ***Impaired*** means, when used in reference to a Claim, Interest, or Class, a Claim, Interest, or Class that is impaired within the meaning of Bankruptcy Code section 1124 of the Bankruptcy Code.

1.52. ***Initial Distribution*** means the payments listed on the Initial Distribution From Sale of Residence set forth in Exhibit B to the Disclosure Statement.

1.53. ***Initial Distribution Date*** means the first Business Day that is no later than 30 days following the closing on the sale of the Residence.

1.54. ***IRS*** shall mean the Internal Revenue Service.

1.55. ***IRS Litigation*** shall mean that certain civil action filed by the United States against Debtor, Mrs. Labovitz, DCIA, the Trusts, and Tara Lloyd, in her capacity as plan agent for the Labovitz Collateral Pool (Civil Action No. 23-cv-924).

1.56. ***Lien*** shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

1.57. ***Local Rules*** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Virginia.

1.58. ***NVR Claim*** means that claim represented by the NVR Note with an unpaid balance of $4,638,322.18 as of the Petition Date. The NVR Claim is held by the Trusts.

1.59. ***NVR Deed of Trust*** means that certain deed of trust that was properly recorded in the land records for the City of Alexandria on November 9, 1990 which secures the NVR Line of Credit.

1.60. ***NVR Line of Credit*** means that certain a home equity line of credit with NVR Savings Bank FSB dated November 9, 1990 executed by the Debtor and Mrs. Labovitz in the original principal amount of $500,000.

1.61. ***Non-Tax Priority Claim*** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a).

1.62. ***Petition Date*** means July 24, 2024.

1.63. ***Professional Fee Claims*** means the Claims of professionals engaged by the Debtor

pursuant to Sections 327 and/or 328 of the Bankruptcy Code.

1.64. **_Residence_** means 510 Wolfe Street, Alexandria, VA 22314.

1.65. **_Scheduled_** means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules, as they have been, or may be, amended.

1.66. **_Schedules_** means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtor pursuant to Bankruptcy Code section 521 and the Bankruptcy Rules, as such schedules have been or may be further modified, amended, or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.67. **_Secured Claim_** means a Claim that is secured by Collateral owned by the Debtor, subject to Section 506(a) of the Bankruptcy Code.

1.68. **_Tax Claim_** means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest.

1.69. **_Taxes_** means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

1.70. **_Trusts_** means the Sharon Labovitz Trusts 1 and 2.

1.71. **_Unclassified Claims_** means Administrative Claims and Priority Tax Claims.

1.72. **_Unimpaired_** means, when used in reference to a Claim, Interest, or Class, a Claim, Interest, or Class that is not impaired within the meaning of Bankruptcy Code section 1124.

1.73. **_U.S. Trustee_** means the Office of the United States Trustee for the Eastern District of Virginia.

### C.  Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply, irrespective of whether the Chapter 11 Case is pending at the time such computation is made.

### D.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), and except as otherwise provided herein or therein, the laws of the Commonwealth of Virginia shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, without giving effect to the conflicts of law principles thereof.

### E.  Exhibits

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.  To the extent any Exhibit is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of this Plan shall control.

### ARTICLE II.    CLASSIFICATION, IMPAIRMENT, AND TREATMENT OF CLAIMS AND INTERESTS

#### A.  CLASSIFICATION AND IMPAIRMENT OF CLAIMS AND INTERESTS

##### 1. *Introduction*

All Claims and Interests, except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

##### 2. *Classification and Impairment*

The following Classes are established and are Impaired or Unimpaired, as indicated below:

| Class Number | Description | Impairment |
|---|---|---|
| Class 1 | Allowed Access Bank Claim | Class 1 is impaired under the Plan. |
| Class 2 | Allowed NVR Claim | Class 2 is impaired under the Plan. |
| Class 3 | Allowed Collateral Pool Claim | Class 3 is impaired under the Plan. |
| Class 4 | Allowed IRS Claim | Class 4 is impaired under the Plan. |
| Class 5 | General Unsecured Claims | Class 5 is impaired under the Plan. |

### B.  TREATMENT OF CLAIMS AND INTERESTS

#### 1. *Unclassified Claims*

In accordance with section 1123(a)(1) of the Bankruptcy Code, certain Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth immediately below.

##### a) *Administrative Claims*

Provided that an Administrative Claim has not been paid prior to the Effective Date, on, or as soon as reasonably practicable after the Effective Date that an Administrative Claim becomes an Allowed Administrative Claim, a Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which such Holder and the Debtor shall have agreed upon in writing.  Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan.  Except for Professional Fee Claims, any Person seeking allowance or payment of an Administrative Claim shall serve and file a motion seeking allowance of such Claim not later than thirty (30) days following the Confirmation Date.  **The failure to file a motion seeking the allowance of any Administrative Claim by the thirtieth (30th) day following the Confirmation Date shall constitute a bar against the assertion or collection of any such Administrative Claim, and shall relieve the Debtor from any liability, responsibility, or obligation with respect to such Administrative Claim.  Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Administrative Claim (other than Professional Fee Claims) that is not filed by the thirtieth (30th) day following the Confirmation Date.  The Debtor shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed motion for the allowance or payment of any Administrative Claim (other than Professional Fee Claims).**

##### b) *Priority Tax Claims*

A Holder of an Allowed Priority Tax Claim other than Class 4 Claim shall receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, (i) payment in full from the sale of the Residence, or (ii) such other treatment as to which such Holder and the Debtor shall have agreed upon in writing; provided, however, that the Debtor shall have the right to prepay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty.

#### 2. *Classified Claims*

##### a) *Class 1 – Secured Access Bank Claim*

DCIA holds the Class 1 Secured Access National Bank Claim, which is in a first-lien position on the Residence. In full and complete satisfaction, discharge, and release of the Secured Access National Claim, DCIA shall receive the first $1,593,022.59 from the net

proceeds of the sale of the Residence, which it shall then deliver to the IRS as payment of the Class 4 Claim below. DCIA shall retain its Liens pending payment of its Allowed Class 1 Claim. The Class 1 Claim is an impaired claim. The Holder of the Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

### b) Class 2 – Secured NVR Claim

The Trusts hold the Class 2 Secured NVR Claim, which is in a second-lien position on the Residence. In full and complete satisfaction, discharge, and release of the Secured NVR Claim, the Trusts shall receive 1) the next $4,000,000 from the net proceeds of the sale of the Residence after the Class 1 Claim is paid in full and 2) a subordinated 50% share of the net proceeds from the sale of the Residence after payment in full of the Class 4 Claim and the Class 5 Claims as provided for herein. The Trusts shall retain their Liens pending payment of their Allowed Class 2 Claim. The Class 2 Claim is impaired under the Plan. The Holder of the Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

### c) Class 3 – Secured Collateral Pool Claim

DCIA holds the Class 3 Secured Collateral Pool Claim, which is in a third-lien position on the Residence. In full and complete satisfaction, discharge, and release of the Secured Collateral Pool Claim, DCIA shall receive 1) the next $3,500,000 of its claim from the net proceeds of the sale of the Residence after the Class 1 Claim is paid in full and the initial payment is made in full to the Class 2 Claim, 2) the next $1,669,179.20 of its claim from the net proceeds of the sale of the Residence after the initial payment provided above is made in full, which it shall then deliver to the IRS as payment of the Class 4 Claim below and 3) a subordinated 50% share of the net proceeds from the sale of the Residence after payment in full of the Class 4 Claim and Class 5 Claims as provided for herein. DCIA shall retain its Liens pending payment of its Allowed Class 3 Claim. The Class 3 Claim is an impaired claim. The Holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

### d) Class 4 – Secured IRS Claim

The IRS holds the Secured IRS Claim, which is in a fourth-lien position on the Residence. In full and complete satisfaction, discharge, and release of the IRS Claim, the IRS shall receive full payment of the IRS Claim through 1) payment of $1,593,022.59 from DCIA as set forth Class 1 herein and 2) payment of the balance of the IRS Claim from the first payment due from DCIA as set forth Class 3 herein. The IRS shall retain its Liens pending payment of its Allowed Class 4 Claim. The Class 4 Claim is impaired under the Plan. The Holder of the Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

### e) Class 5 – General Unsecured Claims

In full and complete satisfaction, discharge, and release of the Class 5 Allowed General Unsecured Claims, the holders of the Allowed Class 5 Unsecured Claims shall receive cash payments equal to 100% of their Allowed Class 5 Claim without interest from the sale of the Residence after payment of the Class 4 Claim in full.

## ARTICLE III.    ACCEPTANCE OR REJECTION OF PLAN

### A.  Impaired Classes of Claims Entitled to Vote

Subject to the applicable provisions of Article II of this Plan, the votes of Holders of Claims and Interests in Impaired Classes who will receive or retain property on account of their Claims or Interests and who are entitled to vote will be solicited for acceptance or rejection of this Plan.  Classes of Claims or Interests that have been designated in this Plan as unimpaired are not entitled to vote with respect to the Plan.

### B.  Confirmation Pursuant to Bankruptcy Code Section 1129(b)

To the extent that any impaired class of Claims does not accept this Plan, the Debtor hereby requests confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code.

### C.  Reservation of Rights Relating to Plan

The Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan or any Exhibit or schedule, including the right to amend or modify this Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

### D.  Elimination of Classes

Any Class that does not contain any Allowed Claims or Interests, or any Claims or Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.    MEANS FOR IMPLEMENTATION OF PLAN

### A.  Revesting of Property

On the Effective Date, all property of the Estate shall revest in the Debtor, subject to the Liens and other obligations expressly created or preserved by this Plan, but otherwise free and clear of all other liens, claims, interests and encumbrances.

### B.  Exemption From Transfer And Recordation Taxes

Pursuant to Bankruptcy Code section 1146(a), any transfers from the Debtor to any Entity pursuant to this Plan in the United States shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### C. Releases of Record.

Upon the request of the Debtor, any Entity that is entitled to receive any distribution under this Plan, or whose Lien is extinguished or modified pursuant to this Plan, shall execute and deliver such documents and instruments as are necessary to release, modify, or preserve of record any Lien, to the extent such Lien is extinguished, modified, or preserved pursuant to this Plan.  Notwithstanding any provision in this Plan, the Debtor shall not be required to make any distribution, or deliver any document or instrument, to such Entity, unless and until such Entity has complied with this obligation.   The obligations set forth in this paragraph shall not be waived by any action or inaction of the Debtor, including, without limitation, commencement of distributions to the affected Entity.

### D. Claims and Causes of Action

Upon confirmation of the Plan, the Debtor, on behalf of the Estate, will be deemed to have released any and all Causes of Action in the IRS Litigation against DCI Publishing of Alexandria, Inc., Sharon McGee Labovitz Trust 1, Sharon McGee Labovitz Trust 2, and Tara Lloyd, in her capacity as plan agent for the Labovitz Collateral Pool and the IRS Litigation will be dismissed with prejudice.

### E. Preservation of Priority

Notwithstanding the occurrence of the Confirmation Date or the Effective Date, all Claims, including, without limitation, Administrative Claims, shall retain their respective priority under the Bankruptcy Code and applicable non-bankruptcy law, unless expressly modified by the terms of this Plan.

## ARTICLE V.    DISTRIBUTIONS

### A. Bar Date

Any Claim in existence as of the Petition Date that is not scheduled by the Debtor, or that is scheduled as contingent, unliquidated, or disputed, or that varies in amount, nature, or priority from that stated in the Debtor's schedules (as amended), must have been asserted, if at all, by the filing of a Proof of Claim with the Bankruptcy Court.  Such Proof of Claim must have been filed with the Bankruptcy Court no later than the Claims Bar Date.  **The failure to file a Proof of Claim by the Claims Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtor from any liability, responsibility, or obligation with respect to such Claim.  Without limiting the generality of the foregoing, no distribution shall be made pursuant to this Plan with respect to any Claim that is not filed by the Claims Bar Date.  The Debtor shall not be required to file any objection in order to confirm or determine the disallowance of any late-filed proof of claim.**

### B.  Distributions on the Distribution Date

On the Distribution Date, the Debtor will make payments to the holders of Claims listed on Exhibit B to the Disclosure Statement from the funds obtained through the sale of the Residence.

### C.  Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 1. *Delivery of Distributions in General.*

Distributions to each Holder of an Allowed Claim shall be made by the Debtor (a) at the addresses set forth on the proofs of Claim filed by such Holder, (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of Claim, (c) at the address reflected in the Schedules if no proof of Claim has been filed and the Debtor has not received a written notice of a change of address, (d) at the address set forth in the other records of the Debtor at the time of the Distribution, or (e) in the case of the Holder of a Claim that is governed by an agreement and is administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer.  Distributions shall be made in accordance with the terms of this Plan.  In making Distributions under this Plan, the Debtor may rely upon the accuracy of the claims register maintained in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court allowing or disallowing Claims in whole or in part.

#### 2. *Undeliverable and Unclaimed Distributions.*

If the Distribution to any Holder of an Allowed Claim is made in accordance with this Plan and is returned to the Debtor as undeliverable or is otherwise unclaimed within sixty (60) days following such Distribution, such Distribution may be cancelled and the Debtor shall be relieved of any and all obligations to make further Distributions to such Holder.  Any Holder of an Allowed Claim that does not timely negotiate any payment made pursuant to this Plan shall be deemed to have forfeited its Claim and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor and his Estate, and their respective agents, attorneys, representatives, employees, or independent contractors, and/or any of their property.  Nothing contained in this Plan shall require the Debtor to attempt to locate any Holder of an Allowed Claim; provided, however, that in its sole discretion, the Debtor may take such other action as the Debtor deems appropriate to locate the Holder of an Allowed Claim.

### D.  Prepayment

Except as otherwise expressly provided in this Plan or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim, at any time.

### E.  Means of Cash Payment

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made, on and after the Effective Date, at the option and in the sole discretion of the Debtor by (i) checks

drawn on or (ii) wire transfers from a domestic bank selected by the Debtor.  In the case of foreign creditors, Cash payments may be made, at the option of the Debtor, in such funds and by such means as are necessary or customary in a particular jurisdiction.

### F.  Interest on Claims

Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on any Claim, and no Holder of an Allowed Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

### G.  Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All Entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.  For example, with respect to any employee-related withholding, if the Debtor is obligated by law to withhold amounts from Distributions to a present or former employee to satisfy such present or former employee's tax and other payroll obligations, the Debtor may withhold a portion of the Distributions allocated to the Holder of an Allowed Claim that is a present or former employee, whether or not such Distributions are in the form of Cash, in such amount as is determined necessary to satisfy such Holder's tax and other payroll obligations with respect to the Distributions.  Notwithstanding the foregoing or any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Debtor for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Debtor in connection with such Distribution.  Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to Article V.E.2 of this Plan.

### H.  Setoffs

#### 1. *By the Debtor*

Except as otherwise provided in this Plan, the Debtor may, pursuant to Bankruptcy Code sections 553, 558, or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan with respect to such Claim, Claims of any nature whatsoever that the Debtor may have against the Holder of

such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

### 2. *By Non-Debtors*

Unless otherwise stipulated in writing by the Debtor, or asserted pursuant to a timely filed Proof of Claim or as expressly provided for by the terms of the agreement underlying any timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Estate (an "Estate Claim") must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time it answers such Estate Claim, or such right of setoff, subrogation, or recoupment will be deemed waived and forever barred.  Notwithstanding the foregoing, nothing herein shall affect the setoff rights of any taxing authority.

### I.   Procedure for Treating and Resolving Disputed, Contingent, and/or Unliquidated Claims

#### 1. *Objection Deadline; Prosecution of Objections*

Except as set forth in this Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Bankruptcy Court.  If an objection has not been filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.  Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in the Chapter 11 Case, or to such Entities as the Bankruptcy Court shall order.  The filing by the Debtor of an adversary proceeding or other legal action against the Holder of any Claim shall constitute a dispute as to such Claim for the purposes of distributions under this Plan.  The provisions of this Plan relating to the Claims Objection Deadline is intended solely to facilitate orderly distributions with respect to Claims. Notwithstanding anything to the contrary herein, the failure of the Debtor to file an objection to a Claim by the Claims Objection Deadline shall not constitute a determination of the validity of such Claim for purposes of res judicata, collateral estoppel, or any other similar doctrine, shall not constitute an admission by the Debtor with respect to any Claim, or otherwise constitute a bar against the Debtor pursuing any action at law or in equity against the Holder of a Claim, or raising any defense against the assertion of any Claim.

#### 2. *No Distributions on Disputed Claims*

Notwithstanding any other provision of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided,

however, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to a Distribution on account of that portion of the Disputed Claim which the Debtor does not dispute at the time and in the manner that the Debtor makes Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan.

### 3. *Distributions on Allowed Claims*

Payments and Distributions to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of this Plan that govern Distributions to such Holders.

### 4. *De Minimis Distributions*

Except as otherwise expressly provided in this Plan, the Debtor shall not have any obligation to make a Distribution on account of an Allowed Claim if the amount to be distributed to the specific Holder of the Allowed Claim does not constitute a final Distribution to such Holder and such Distribution has a value less than $25.00.

### J. Fractional Dollars

Any other provision of this Plan notwithstanding, the Debtor shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### K. Distribution Record Date

The Debtor will have no obligation to recognize the transfer of or sale of any Claim or any participation in any Claim, that occurs after the Confirmation Date, and will be entitled for all purposes herein to recognize, deal with, and distribute only to those Holders of Allowed Claims who are record Holders of such Claims, or participants therein, as of the close of business on the Confirmation Date, as stated on the official claims register.

### ARTICLE VI.    <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

### A. Assumption and Rejection

The Debtor intends to assume all Executory Contracts and Unexpired Leases set forth on the Assumption List attached as Exhibit C to the Disclosure Statement. The Debtor reserves the right to modify the Assumption List at any time prior to the Effective Date, including, without limitation, to change the disposition of an Executory Contract or Lease, the cure amount, or any other matter addressed by the Assumption List.  The Assumption List may be modified by the Debtor by filing an amendment to the Assumption List with the Court at any time prior to the Effective Date.  The Assumption List shall identify the Executory Contract or Lease that the Debtor seeks to retain or to sell pursuant to this Plan.  The Assumption List additionally shall

specify the amount of any cure payment that is required in order to cure monetary defaults with respect to any assumed Executory Contract or Lease.  Unless otherwise ordered by the Bankruptcy Court, all Persons shall be bound by the cure amounts stated in the Assumption List as in effect at the time of entry of the Confirmation Order.

The Assumption List shall provide for the assumption, rejection, or provisional rejection of each Executory Contract or Lease.  Except to the extent of any modification of the Assumption List, (i) the Executory Contract or Lease shall be deemed assumed on the Effective Date if the Assumption List specifies that such Interest shall be assumed; (ii) the Executory Contract or Lease shall be deemed rejected on the Effective Date if the Assumption List specifies that such Interest shall be rejected; and (iii) the determination of assumption or rejection shall be deferred, as set forth below, pending the resolution of rejection damage claims if the Assumption List specifies that such Interest is provisionally rejected.

Unless the counter party to any Executory Contract or Lease serves and files a timely objection to the treatment specified in the Assumption List, the Assumption List (as it may be modified by the Debtor) shall be binding.  Without limiting the generality of the foregoing, absent a timely objection, no cure claim in excess of the amount specified in the Assumption List and no objection to any specified assignment shall be entertained.  Any objection that is timely filed shall be considered at the Confirmation Hearing, or at such other hearing as the parties may agree or the Court may establish.

Except to the extent that the Debtor files an amendment to the Assumption List fewer than twenty one (21) days prior to the commencement of the Confirmation Hearing, all objections to the Assumption List shall be served and filed no later than fourteen (14) days following service of the Disclosure Statement.  In the event that the Debtor files an amendment, or amendments, to the Assumption List, any objection to the proposed amendment shall be served and filed no later than fourteen (14) days following the filing of such amendment.  Absent agreement of the Debtor and the affected counterparty, or order of the Court, the hearing with respect to such amendment shall not be scheduled earlier than twenty eight (28) days following the filing of the amendment.

In the event that the Debtor specifies in the Assumption List, as it may be amended, that an Executory Contract or Lease is provisionally rejected, the determination of assumption or rejection, as well as the determination of any cure amount or rejection damages, as applicable, and any other matter related to the assumption, assignment, or rejection of a Executory Contract or Lease, shall be preserved and deferred until the resolution of any objection to a Claim as may have been, or may be, asserted by or with respect to such Executory Contract or Lease.  The manager, general partner, or other similar person with authority to act on behalf of Executory Contract or Lease shall serve and file any rejection damage Claim not later than thirty (30) days following the Confirmation Date, or such other date as may be set by the Court at the Confirmation Hearing.  The Debtor shall serve and file any response to any Claim asserted by the Executory Contract or Lease not later than the Claims Objection Deadline.  At any time on or before (a) the thirtieth (30th) day following the entry of an order by the Bankruptcy Court determining any Objection to the Claim with respect to an affected Executory Contract or Lease, or (b) if no objection is filed by the Claims Objection Deadline, thirty (30) days following the

Claims Objection Deadline, the Debtor may file an amendment to the Assumption List changing the disposition of the affected Executory Contract or Lease from provisionally rejected to assumed.  Absent a timely amendment, the designation of provisional rejection shall be deemed changed to rejected.  In the event a timely amendment is filed specifying assumption of the affected Executory Contract or Lease, the designation shall be deemed to be amended to assumption, and the Interests of the Debtor in such Executory Contract or Lease shall be deemed assumed.  To the extent practicable, any disputes regarding cure costs, assignment, or other matters shall be determined in conjunction with any objection as may be filed with respect to any Claim of an affected Executory Contract or Lease.

### B.  Rejected Contracts and Leases

Except with respect to Executory Contracts or Leases dealt with in the Assumption List, as set forth above, or as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all pre-petition executory contracts and unexpired leases to which any of the Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) is the subject of a pending motion to assume or reject on the Confirmation Date, or (d) is an insurance agreement of the Debtor; provided, however, that the foregoing reference to insurance agreements shall not constitute an admission by the Debtor that any insurance agreement is an executory contract or that the Debtor has any liability thereunder.  Except to the extent that the Debtor specifically has agreed, or may agree, in writing, the rejection of any executory contract or unexpired lease, including, without limitation, contracts related to Investment Funds, shall not constitute a waiver or release of any property right, claim or cause of action belonging to the Debtor, all of which are expressly reserved.

### C.  Bar to Rejection Damages

**If the rejection of an executory contract or unexpired lease pursuant to Article VI.B. of this Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor or his Estate, or their successors, assigns, or properties unless a proof of Claim is filed and served on the Debtor within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by this Plan or the Bankruptcy Court.**

### D.  Assumed and Assigned Contracts and Leases

To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assuming, as of the Effective Date, those executory contracts and unexpired leases identified in such documents as being assumed.  To the extent provided in the Confirmation Order, this Plan, or any other Plan Document entered into after the Petition Date or in connection with this Plan, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 assigning, as of the Effective Date, those executory

19

contracts and unexpired leases identified in such documents as being assigned. Unless otherwise specified in the Assumption List, the Debtor will cure any monetary defaults with respect to Assumed Executory Contracts or Leases on or before the Initial Distribution Date.

### ARTICLE VII.   CONFIRMATION AND CONSUMMATION OF THIS PLAN

#### A. Conditions to Confirmation

In addition to any other conditions as may be imposed by law, the following are conditions to confirmation of the Plan:

1.   A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code § 1125 shall have been entered by the Bankruptcy Court;

2.   A proposed Confirmation Order in form and substance, reasonably acceptable to the Debtor; and

3.   Approval of all provisions, terms and conditions hereof in the Confirmation Order.

#### B. Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article VII.C of the Plan:

1.   The Confirmation Order shall have been entered in the Chapter 11 Case and shall provide that the Debtor is authorized to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

2.   The Confirmation Order shall have become a Final Order;

3.   The Debtor shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with, and expressly provided for under, the Plan; and

4.   All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

#### C. Waiver of Conditions

Each of the conditions set forth in Article VII.A and or VII.B of this Plan, except for entry of the Confirmation Order, as set forth in Article VII.B.1 of this Plan, may be waived in whole or in part by the Debtor. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtor as a basis to not consummate this Plan regardless of the

circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### D.  Consequences of Non-Occurrence of Effective Date

In the event that the Effective Date does not occur, the Debtor reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that this Plan be null and void in all respects, and/or that any settlement or treatment of Claims provided for in this Plan be null and void.  In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions as may be approved by the Court either before or after the expiration of such 30-day period.

## ARTICLE VIII.  <u>ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS</u>

### A.  Professional Fee Claims

#### 1. *Final Fee Applications*

Final Fee Applications shall be filed no later than ninety (90) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.  To the extent Professional Fee Claims have been allowed prior to the Effective Date, such Claims shall be paid on the Effective Date (unless otherwise agreed in writing between the Debtor and the affected Professional).  To the extent that a Professional Fee Claim is allowed on or after the Effective Date, such Professional Fee Claim shall be paid within ten (10) business days following the entry of the order allowing such Claim (unless otherwise agreed in writing between the Debtor and the affected Professional).  Any Professional Fee Claims that are not paid in accordance with the foregoing by agreement between the Debtor and the affected professional shall be paid out of the proceeds of the sale of the Residence.

#### 2. *Employment of Professionals after the Effective Date*

From and after the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date shall terminate, and Professionals shall be compensated without the requirement of application to, or order of, the Bankruptcy Court. Any Professional Fee Claims arising after the Effective Date shall be paid out of the proceeds of the sale of the Residence.

### B.  Other Administrative Claims

All other requests for payment of an Administrative Claim arising from and after the Petition Date up to and through the Effective Date, other than Professional Fee Claims, must be filed with the Bankruptcy Court and served on counsel for the Debtor no later than the Administrative Claims Bar Date.  Unless the Debtor objects to an Administrative Claim, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtor objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.  All allowed Administrative Claims, other than Administrative Fee Claims, shall be paid in accordance with Article II.B.1 of this Plan.

## ARTICLE IX.   <u>EFFECT OF PLAN CONFIRMATION</u>

### A.  Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns.

### B.  Discharge of the Debtor

The Debtor will be entitled to a discharge in accordance with § 1141(d)(5) of the Bankruptcy Code and shall make application for such discharge upon filing for a final decree to close the Chapter 11 Case.

### C.  Injunction

**EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE CONFIRMATION ORDER SHALL PROVIDE, AMONG OTHER THINGS, THAT FROM AND AFTER THE EFFECTIVE DATE ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTOR IS PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTOR, HIS ESTATE, OR ANY OF HIS PROPERTY ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS: (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTOR, EXCEPT AS SET FORTH IN ARTICLE V.H. OF THIS PLAN; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN OR THE CONFIRMATION ORDER.**

### D.  Exculpation and Indemnification Obligations

#### 1. *Exculpation*

Neither the Debtor, or any of his attorneys, consultants, advisors and agents (acting in such capacity) (collectively, the "Exculpated Parties"), shall have or incur any liability to any Person or Entity for any act taken or omitted to be taken in connection with or arising out of the commencement of the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation or approval of this Plan, any other plan of reorganization or any compromises or settlements contained herein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan (provided, however, that the foregoing provisions shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct).  Each of the foregoing parties in all respects shall have been and shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under this Plan.  The rights granted under this paragraph are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties may have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law.

#### 2. *Existing Indemnification Obligations*

Except as otherwise provided in the Plan or any contract, instrument, release, or other agreement or document entered into in connection with the Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory.  Nothing in the Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

### E.  Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.  Upon the Effective Date, the injunction provided in Article IX.C shall apply.

### ARTICLE X.    <u>RETENTION OF JURISDICTION</u>

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan, and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

2.     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

3.     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.     Effectuate performance of and payments under the provisions of this Plan;

5.     Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to the Chapter 11 Case, this Plan, or any Plan Document;

6.     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

7.     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

8.     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation,
consummation, or enforcement of this Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11.     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

13.     Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

14.     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

15.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

16.     Hear and determine any Causes of Action not released herein;

17.     Hear and determine all disputes involving the existence, nature, or scope of the injunctions, indemnification, exculpation, and releases granted pursuant to this Plan;

18.     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

19.     Hear and determine all matters related to the sale of the Residence;

20.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

21.     Enforce all orders previously entered by the Bankruptcy Court;

22.     Dismiss the Chapter 11 Case; and

23.     Enter a final decree closing the Chapter 11 Case.

## ARTICLE XI.   MISCELLANEOUS PROVISIONS

### A. Modifications and Amendments

The Debtor may alter, amend, or modify this Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of this Plan as defined in Bankruptcy Code section 1101(2), the Debtor may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such

matters as may be necessary to carry out the purpose and effect of this Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### B.   Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, then the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### C.   Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Entity.

### D.   Payment of Statutory Fees

All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date by the Debtor.  All such fees that become due and payable thereafter by the Debtor shall be paid by the Debtor when due.  The Debtor shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Case is closed or converted and/or the entry of a final decree.  The Debtor shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Debtor.

### E.   Revocation, Withdrawal or Non-Consummation

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtor revokes or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Entity, (ii)

prejudice in any manner the rights of the Debtor or any other Entity, or (iii) constitute an admission of any sort by the Debtor or any other Entity.

### F.  Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, (v) facsimile transmission or (vi) e-mail, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or e-mail transmission, when actually received and telephonically confirmed by the recipient, and (d) addressed as follows:

***The Debtor:***

Christopher A. Jones, Esq.
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Phone: (703) 280-9260
Fax: (703) 280-9139
e-mail: CAJones@whitefordlaw.com

with a copy to:

Peter C. Labovitz
510 Wolfe Street
Alexandria, Virginia 22314

### G.  Plan Supplement(s)

Exhibits to this Plan not attached hereto or to the Disclosure Statement shall be filed in one or more Plan Supplements. Any Plan Supplement (and amendments thereto) filed by the Debtor shall be deemed an integral part of this Plan and shall be incorporated by reference as if fully set forth herein.  Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the office of the clerk of the Bankruptcy Court or its designee during normal business hours, by visiting the Bankruptcy Court's website at www.vaeb.uscourts.gov (PACER account required).  Holders of Claims and/or Interests may obtain a copy of any Plan Supplements upon reasonable written request to counsel for the Debtor.

### H.  Exhibits

Any and all Exhibits, or other lists or schedules not filed with this Plan or accompanying Disclosure Statement shall be filed with the Clerk of the Bankruptcy Court.  Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtor in accordance with Article XI.F of this Plan.

### I.  Tax Reporting And Compliance

The Debtor is hereby authorized to request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

### J.  Filing Of Additional Documents

On or before substantial consummation of this Plan, the Debtor reserves the right to file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Dated: November 20, 2024                    Respectfully submitted

                                            WHITEFORD TAYLOR & PRESTON LLP


                                    By:     /s/ Christopher A. Jones
                                            Christopher A. Jones (VSB # 40064)
                                            Alexandra G. DeSimone (VSB # 95760)
                                            WHITEFORD, TAYLOR & PRESTON LLP
                                            3190 Fairview Park Drive, Suite 800
                                            Falls Church, VA 22042
                                            Telephone: (703) 280-9260
                                            Email: cajones@whitefordlaw.com
                                            Email: adesimone@whitefordlaw.com


                                            *Counsel to the Debtor and
                                            Debtor in Possession*


                                            Peter Churchill Labovitz